■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT GERMAINE, SR., Respondent. — Appeal by the People from an order of the Supreme Court, Suffolk County (Jaspan, J.), dated September 26, 1980, which granted the defendant's motion to suppress certain physical evidence and dismissed two indictments against him. Order reversed, on the law, motion to suppress denied, and Indictment Nos. 1127-80 and 1183-80 reinstated. On April 27, 1980 a Nassau County Judge (Harrington, J.), issued a search warrant for premises located at 1 Windward Lane, Commack, Suffolk County, New York, which premises was described as "a two-story frame dwelling house, white shingle, blue/green trim, located on the South/East corner of Windward Lane, with attached garage, swimming pool in rear yard, enclosed by cyclone fence". The purpose of the warrant was for the search and discovery of "heroin, cocaine, other controlled substances, records, documents, paraphernalia, and U.S. Currency used and possessed in connection with illegal drug trafficking". Probable cause for the issuance of the search warrant was found by the court after its review of an affidavit sworn to April 27, 1980 by one Daniel Mann, a narcotics squad detective of the Nassau County Police Department, submitted in support of the warrant, together with a review of three previously issued eavesdropping warrants and extension orders, and the applications with respect to the warrants and extension orders. In addition, there were attached to the affidavit sworn to April 27 selective transcripts of conversations obtained pursuant to the legal wiretap surveillance. All of the eavesdropping warrants and extension orders involved the activities of a certain drug trafficking operation in which one Henry Hill was a participant. In granting the defendant's motion to suppress certain physical evidence seized at 1 Windward Lane, Commack, New York, pursuant to the search warrant, the hearing court noted that the bases of the search warrant application were the personal observations of Detective Mann, together with four telephone conversations made by Hill to "Bobby" (an unnamed party), at the aforesaid address, supported by the incorporation by reference of the applications for the three separate eavesdropping warrants and extensions. In conclusion the court

stated: "I have examined the application for the search warrant and each of the applications for the eavesdropping orders and extensions thereof and studied the alleged code words employed and find that they fail to set forth any factual information upon which the issuing magistrate could conclude that there was probable cause to believe that controlled substances and related contraband would be found at the 1 Windward Lane address." Such determination that there existed no probable cause to justify the issuance of the search warrant was made as a matter of law (see *Matter of McGrath v Gold,* 36 NY2d 406, 412; *People v Oden,* 36 NY2d 382, 384). Defendant contends that the only real issue in this matter is whether the application for the search warrant demonstrated probable cause to establish that criminal narcotics activity was occurring at the subject premises on April 27, 1980, and that a search of the premises would disclose contraband. Defendant claims that there is not a single reference to criminal activity in the transcripts of the conversations between Hill and "Bobby" at the address in question, and, therefore, the application totally fails to demonstrate probable cause to justify the issuance of the search warrant. Included as part of the documents incorporated by reference in support of the application for the search warrant was the affidavit of the District Attorney of Nassau County, in support of the eavesdropping extension order granted April 25, 1980, which specifically referred to the telephone instrument used for the calls between Hill and "Bobby" at the Windward Lane location. The District Attorney's affidavit indicated that the conspirators were using coded language and referred to a supporting affidavit of Detective Mann, sworn to April 25, 1980. In Mann's affidavit he decoded a substantial number of words used in the various intercepted telephone conversations involving Hill and others. Furthermore, there was included in Mann's affidavit, sworn to April 27, 1980, in support of the search warrant certain portions of telephone conversations intercepted March 30, April 4, April 10 and April 17, 1980, between Hill and "Bobby", which conversations had been decoded by Mann. Detective Mann had impressive credentials and a general expertise in the field of narcotics investigation and decoding, which expertise could be relied on upon a judicial review of the application for a search warrant. After obtaining from the telephone company the address of the number to which Hill had placed telephone calls, the contents of which, in the opinion of Mann, concerned the possession and sale of controlled substances, and based upon exigent circumstances, which circumstances involved the anticipated movement of controlled substances from the Long Island area to the City of Pittsburgh on April 27, 1980, the application was made with respect to the search warrant in question. Criminal Term did not determine that the eavesdropping warrants and extensions were improvidently issued without sufficient bases to support the proper standards of probable cause (see *Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410). Further, there was no suppression order with respect to the tapes obtained by virtue of the eavesdropping orders or any evidence derived therefrom, except the order appealed herein. Conversations involving crimes designated in an eavesdropping warrant are subject to interception regardless of the identity of the other party to the conversation and the fact that the other party was not identified by name in the warrant (*People v Gnozzo,* 31 NY2d 134, 138-139). After a review of the transcripts of the conversations, we are satisfied that even with the coded language, a judicial officer, even without the assistance of an expert to decode the language used by the parties, could conclude that the conversations involved the possession and sale of narcotics and other controlled substances. The documents submitted in support of the search warrant clearly demonstrate (1) that there existed a drug trafficking operation in which one Henry Hill and others were involved; (2) that the intercepted telephone conversations between Hill and Bobby involved the

possession and sale of controlled substances; (3) that based upon the informa-
tion received from the telephone company, the telephone number to which Hill
had placed calls was at the address described in the search warrant; and (4)
that there was probable cause to believe that there existed controlled sub-
stances and other items contained in the warrant at the address as described.
The expertise of Detective Mann, the source of his information, the nature of
the crimes and the exigent circumstances were comprehensively examined and
evaluated by the Judge issuing the warrant (*People v Hanlon,* 36 NY2d 549,
559). We conclude therefore that probable cause existed for the issuance of the
search warrant and the conclusion of Criminal Term that the "code words",
together with the documentation submitted in support of the application to
issue the warrant did not establish probable cause to believe that controlled
substances and other contraband would be found at the subject premises, was
error. The defendant, however, urges further additional grounds for the
invalidity of the search warrant. He claims that since the eavesdropping
warrants did not include his name, the use against him of the intercepted
conversations is illegal (CPL 700.20, subd 2, par [b], cl [iv]). There is no
question that if a person who is a target of a search warrant is known, his
name should be included in the warrant. In this case, defendant's name was
not known until after the execution of the search warrant and certainly there
is no prohibition against the use of validly intercepted conversations against
such outside party (see *People v Gnozzo, supra*). Defendant further contends
that the search warrant failed to sufficiently describe the premises to be
searched (CPL 690.45, subd 4). In this regard, we note that the premises as
described in the application for the warrant conformed with the outside
appearances of the building in question, and there was no indication of any
apparently illegal conversion of the house into a two-family structure with
dual occupancy of the premises. Based upon these facts, the search warrant
complied with the requirements of specificity contained in CPL 690.45 (subd 3)
(*People v Fiore,* 46 AD2d 814; see *United States v Santore,* 290 F2d 51, cert den
365 US 834; cf. *People v Rainey,* 14 NY2d 35). As to the contention that the
search warrant was overbroad in providing for the search for other controlled
substances in addition to those specifically named, we note that the warrant in
question was based upon more than suspicion that there existed a single item
of drugs upon the premises; indeed the evidence suggested a regular pattern of
drug dealing, and, therefore, the presence of more than one single item of
contraband could be anticipated (see *People v Ambrozak,* 54 AD2d 735; *People v
Niemczycki,* 67 AD2d 442; cf. *People v Yusko,* 45 AD2d 1043). Weinstein, J. P.,
O'Connor, Bracken and Rubin, JJ., concur.