THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOHN I. SINATRA, Respondent.

Second Department, June 11, 1984

**APPEARANCES OF COUNSEL**

*Carl A. Vergari, District Attorney* (*Lois A. Cullen* and *Gerald D. Reilly* of counsel), for appellant.

*Lawrence L. Maffei* for respondent.

**OPINION OF THE COURT**

LAZER, J. P.

At approximately 5:00 P.M. on March 3, 1983, the police responded to an alarm of a reported burglary at a residence in the Town of Greenburgh. During their investigation at the premises, the officers observed firearms, cocaine and narcotics paraphernalia and, rather than attempt further search and immediate seizure, they decided to obtain a search warrant. Since the defendant was present at the premises, some of the officers remained at the scene while one departed to present a search warrant application to a town magistrate. Although the magistrate issued the warrant, the evidence seized pursuant to its provisions was

later suppressed by the County Court because of deficiencies in the warrant application. In view of the exigent circumstances, the prompt effort to comply with constitutional mandates, and the clear preference to be accorded to search warrants, we now interpret the warrant application liberally and sustain the magistrate's probable cause determination.

In his affidavit made in connection with the application, a police officer declared that "officers responding to a burglar alarm at [a named residence] discovered the residence to not be secure. Officers entered the residence and during a search of the premisis [sic] for the commission of a burglary officers discovered in plain view in a bedroom narcotics parephenalia [sic], loaded firearms". The town magistrate issued the warrant and authorized the officers to enter the premises without giving notice of authority. In his motion to suppress the evidence seized as a result of the warrant, defendant argued that the warrant application was defective because (1) the property to be seized was insufficiently described, (2) the officers who allegedly discovered the property were not named, (3) the narcotics expertise, if any, of the observing officers was not set forth, (4) the no-knock provision lacked foundation, and (5) the dates of the officers' observations were not provided. The suppression motion was granted.

While the form of the application was hardly ideal, Fourth Amendment jurisprudence strongly suggests that doubtful or marginal cases be determined in accordance with the preference given to search warrants. As a consequence, the underlying documents that support issuance of a warrant should be interpreted in a commonsense manner rather than hypertechnically (*Illinois v Gates*, 462 US 213; *United States v Ventresca*, 380 US 102; *People v Hanlon*, 36 NY2d 549). The preference accorded search warrants is particularly strong when the exigencies of the situation call for quick execution (*People v Hanlon, supra; People v Germaine*, 87 AD2d 848; *People v Simon*, 118 Misc 2d 745). In issuing a warrant, a magistrate may properly rely on normal inferences which may be drawn from all of the allegations of fact contained in the application (*United States v Leichtling*, 684 F2d 553).

None of the alleged deficiencies in the warrant application at issue here vitiate the conclusion that there was probable cause for issuance of the warrant. First, the property was described sufficiently in the application as "handguns, rifles, narcotics and narcotics paraphenalia [*sic*]". The courts are least demanding when the objects described are contraband — it may be described generally as to its character (*People v Germaine, supra; People v Mangialino,* 75 Misc 2d 698; 2 LaFave, Search and Seizure, § 4.6, p 99). Descriptions such as "narcotic drugs" and "narcotics paraphernalia" have thus been upheld (*People v Mangialino, supra; People v Schmidt,* 172 Col 285). Second, while identification of the individual police observers might have been preferable in the application, their identity and verification of their observations were readily accessible to the defendant to enable him to expose fabrication of the evidence (see *People v Garzia,* 44 NY2d 867). Third, while a statement concerning the experience of the observing officers in narcotics investigations would have strengthened the claim of probable cause (*People v McRay,* 51 NY2d 594), the absence of an allegation concerning such expertise does not render their observations unreliable (*United States v Doty,* 714 F2d 761). Fourth, even if the inclusion of a "no-knock" provision lacked foundation, suppression was not required since the entry was not gained without notice to the occupier of the premises.

Finally, the failure to include the dates of the officers' observations does not compel invalidation of the warrant. Proof in a warrant application must be of facts "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time" (*Sgro v United States,* 287 US 206, 210), but undated information is not unreliable per se if a common-sense reading of the entire application reasonably implies close proximity in time (*People v Hanlon,* 36 NY2d 549, *supra; United States v La Monte,* 455 F Supp 952; *United States v Ciaccio,* 356 F Supp 1373). Here, both the tone of the application and the nature of the underlying circumstances indicate the close temporal proximity of the observations (see *People v Hanlon, supra*). Not only did the statement in the application that the officers had been left at the premises permit the magistrate to draw a reasonable inference that the warrant had

been sought without delay, but the precise time of the observations is less critical when the police have undertaken to safeguard the evidence than when the suspect is in a position to move or dispose of the contraband (see 1 LaFave, Search and Seizure, § 3.7, subd [a]). Relying on inferences reasonably to be drawn from an affidavit prepared by a draftsman unskilled in legal matters, we conclude that the proof submitted was not stale.

In sum, "the procedure which was followed here is not ideal. However, the record shows a conscientious effort to comply with constitutional and statutory requirements applicable to search warrants" (*People v Brown,* 40 NY2d 183, 188). Since the warrant application survives technical scrutiny and a substantial basis existed for the magistrate to conclude that the search would uncover evidence of wrongdoing (see *Illinois v Gates,* 462 US 213, *supra*), we reverse the order of the County Court and sustain the warrant and the corresponding search and seizure.

NIEHOFF, BOYERS and LAWRENCE, JJ., concur.

Order of the County Court, Westchester County, dated June 2, 1983, reversed, on the law and the facts, defendant's motion to controvert a search warrant and suppress any evidence seized thereunder denied, and matter remitted to the County Court, Westchester County, for further proceedings.